JONAS LIVERMORE et al. *vs.* THE BOARD OF CHOSEN FREEHOLDERS OF THE COUNTY OF CAMDEN.

1. The board of chosen freeholders of the county of Camden are not liable under the act of 1859, (*Pam. Laws* 633, §§ 20,) 21, for damages to the owner of a grist mill for not repairing a bridge over a race-way, whereby the water in the dam escapes.

2. The act providing for bringing actions against boards of chosen freeholders for damages occasioned by reason of their failure to keep bridges in repair, (*Laws of* 1859, *page* 626,) only applies to personal property which may be moving over the bridge, and does not extend to injuries to real estate.

---

On demurrer to narr.

Argued before the Chief Justice, and Justices OGDEN, VREDENBURGH, and BROWN.

*W. L. Dayton*, for defendants.

*Browning*, for plaintiffs.

The CHIEF JUSTICE. This case is before the court upon a demurrer to the plaintiffs' declaration. The question presented for decision is, whether the defendants are lia-

ble for the consequential injury sustained by the plaintiffs' mill-dam and sluice over the south branch of Timber creek, in the county of Camden, by reason of the fall of a county bridge upon the dam and sluice gates *per quod* the dam and gates were broken down and the water let out of plaintiffs' pond, who were thus deprived of the use of the water as motive power for their grist mill, situate below the dam and gates. The declaration alleges that the falling of the bridge was occasioned by the neglect of the defendants to repair it, as they were bound to do.

This court held, in *The Freeholders of Sussex* v. *Strader*, 3 *Harr.* 108, that no action lies at the suit of an individual against the board of chosen freeholders of a county for injuries sustained in consequence of their not completing or keeping in repair a county bridge or its abutments; that the only remedy was by indictment. This principle was re-affirmed in this court in *Cooley* v. *The Chosen Freeholders of Essex*, 3 *Dutcher* 415. See, also, *The State* v. *The Chosen Freeholders of Essex*, 3 *Zab.* 214, in which it was held that it rested in the discretion of the board whether to rebuild a bridge or not, that the location might be changed.

The ground upon which these decisions first cited rest is, that the duty is owed to the public, and not to each individual who may have occasion to use the bridge, and that the adoption of any other rule would be highly inexpedient and destructive of the public interests, by subjecting these public corporations to numberless suits for every petty neglect occasioning inconvenience to any one.

The counsel for the plaintiff attempted to distinguish this case from the cases cited in this, that in this the duty was owing to the mill-owner, and not to the public, as in the other. But I am unable to preceive the soundness of the distinction. The whole suit rests upon the obligation to repair the bridge, because it is a part of a public highway. The duty counted upon is a public duty. The plaintiff alleges a private injury, sustained by reason of

the neglect of this public duty. It may be that this private injury is of a peculiar character, occasioned by the falling of the bridge upon the dam, instead of that sustained by one in the use of the bridge; but that cannot alter the fact that the obligation or duty neglected was public, instead of private. It cannot be pretended that the plaintiffs had any right to enforce the building the bridge in this place—it was not especially for their use.

The case falls within the rule in The Freeholders of Sussex v. Strader.

But it was insisted that this suit might be maintained in virtue of the 21st section of the supplement to an act concerning roads, (*Laws of* 1859, *chap.* 219,) which provides that, if any damage shall happen to any person or persons, his, her, or their team, carriage, or other property, by means of the insufficiency or want of repair of any bridge upon any public road in any township in this state, which such township, or the county in which the same shall be situate, is or shall be liable to make or repair, the person or persons so sustaining such damage shall have the right to recover the same, with costs, in an action on the case in any court of competent jurisdiction in this state, to be instituted by such person or persons, his, her, or their executors or administrators, against the board of chosen freeholders of such county.

This act does not reach the case. It will be perceived that its object was not to deprive the board of freeholders of their immunity from suits of private individuals in all cases, but only those coming fairly within its scope. Its main, if not its only design was to secure the repair of roads and bridges for the benefit of travelers using them. It is a supplement to the act concerning roads, not to the act defining the powers and duties of the boards of freeholders of the several counties. The words other property, used in the act, obviously meaning property of the same kind, that is personal and movable, as that particularly mentioned. It was intended to include

what might be carried in the carriages, as well as the vehicles themselves. It would be an unwarrantable extension of the term, used in that connection, to make it include real estate.

Where an act specifies a number of things all of a particular character, and then closes with the general expression, other property, it means other property *ejus dem generis*.

The damage meant by the act was direct injury to persons or property while in the use of the bridge, not consequential damages growing out of the loss of that destroyed by the fall of the bridge.

This act gives an action to the executor or administrator, as well as the testator or intestate. It could not have been the intention of the legislature to make such a cause of action as that disclosed in the declaration survive to the executor or administrator, when the land injured went to the devisee or heir.

I cannot bring my mind to the conclusion that damage to real estate was intended to be provided for in this act.

There must be judgment for the defendant on this demurrer.

VREDENBURGH, J. The complaint is that, on the 10th of March, 1846, a certain dam, for the use of the plaintiff's grist mill, was standing across the south branch of Timber creek, in and upon which dam there had been erected, and was then standing, a certain bridge over the race and floodgates, and that afterwards a certain public road was laid over the said dam and across the said race and floodgates, whereby it became the duty of the defendants to rebuild and repair the said bridge; and that, on the 23d of September, 1859, the said bridge became out of repair, fell down, and was carried away by the water, and that the defendants have neglected to rebuild the same, whereby the water in the dam ran away, and the plaintiff's water-power destroyed.

Livermore v. Freeholders of County of Camden.

In the case of *Strader* v. *The Freeholders of Sussex*, 3 *Harr.* 108, this court decided that the freeholders were not liable *civiliter* for not repairing bridges, so that the act, (*Nix. Dig.* 707, § 26,) does not affect this question. That case is as applicable to the case now before the court as the one then decided.

It is, however, urged by the plaintiff, that the act of 1859, (*Pam. Laws* 633, §§ 20, 21,) makes the freeholders liable in this case. This last act provides that if any damage shall happen to any person, his team, or other property, by means of want of repair, &c., of any bridge, he may recover his damages against the board of freeholders. But it is perfectly manifest that the damages here spoken of are those which accrue to those using the road and bridge for passage, and was not intended to apply to such damages as are claimed in the present action.

There is still another answer to this declaration; the damages claimed by the plaintiff arise not because the bridge was not repaired, but because his dam went out. His water is not kept in by the bridge, but by the dam. The plaintiff brings suit because his water sweeps away the defendants' bridge. His remedy is to put up his dam, and let the bridge take care of itself.

The defendants have as good a right to sue the plaintiff because the water of the plaintiff carried away their bridge as the plaintiff has to sue the defendants because their bridge let out his water.

The declaration discloses no cause of action, and judgment must be entered in favor of the demurrer.

BROWN, J., concurred.

AFFIRMED, 2 *Vr.* 507. *Cited in Pray* v. *Jersey City*, 3 *Vr.* 397.