13 N.J. Super. 239 (1951)
80 A.2d 451
ANDREW W. BOYLE, PLAINTIFF-APPELLANT,
v.
COUNTY OF HUDSON, IMPLEADED AS BOARD OF CHOSEN FREEHOLDERS OF HUDSON COUNTY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued March 19, 1951.
Decided April 26, 1951.
*240 Before Judges JACOBS, EASTWOOD and BIGELOW.
*241 Mr. Louis J. Greenberg argued the cause for the plaintiff-appellant (Mr. Samuel M. Cole, attorney).
Mr. Lewis B. Eastmead argued the cause for the defendant-respondent (Mr. Daniel T. O'Regan, attorney).
The opinion of the court was delivered by EASTWOOD, J.A.D.
During his incarceration as a prisoner at the Hudson County Penitentiary, the appellant, Andrew W. Boyle, suffered certain injuries and instituted an action against the defendant, County of Hudson, to recover damages therefor. On defendant's motion at the conclusion of the plaintiff's case, the Law Division of the Hudson County Court dismissed the action, on the ground that the plaintiff had failed "to show willful, malicious negligence on the part of the defendant."
For the purpose of our discussion and determination of this appeal, a concise summary of the facts will suffice. On July 10, 1948, plaintiff was assigned by the keeper to sprinkle the road in the compound. A horse named "King" was selected by the keeper to draw the water wagon and he attached the harness while Boyle held the horse. After Boyle had mounted the wagon, taken the reins and while the cart was being turned around, the horse bolted for the barn. Boyle attempted unsuccessfully to get the horse under control and, fearing that he would be crushed between the wagon and the barn, Boyle leaped from the wagon, thereby causing his alleged injuries. Boyle had previously driven the horse in question, testifying that on each occasion it required the assistance of several persons to hitch the horse to the cart; that it was known to be vicious and difficult to handle; that he had made known that fact to the authorities and suggested its exchange; that he had never driven the water cart before; that it was a very old piece of equipment, but he assumed it was in good condition. Three witnesses testified as to the so-called wild nature of the horse, its frequent "runs" while hitched to prison carts, and that the water cart was an old type.
*242 "The rule is well settled that upon motions for dismissal, the equivalent of motions for nonsuit or directed verdict under the former practice, the court cannot weigh the evidence, but must take as true all evidence which supports the view of the party against whom the motions are made, and must give him the benefit of all legitimate inferences which are to be drawn therefrom in his favor." Visaggi v. Frank's Bar and Grill, Inc., 4 N.J. 93 (Sup. Ct. 1950), at p. 98.
The plaintiff contends that the evidence established a prima facie case of active wrongdoing on the part of the defendant, County of Hudson, and the court erred in dismissing his action. The defendant contends that the maintenance of the penitentiary was a governmental function for which it is not liable for negligence in the performance thereof; that it is not liable for injuries to a prisoner received from a domestic animal in the absence of a showing of its vicious temperament and knowledge of such temperament by its owner or keeper, and that R.S. 40:9-2 renders it immune from liability "for injury to the person from the use of any public grounds, buildings or structures."
Plaintiff concedes that the erection, regulation, and maintenance of a prison, workhouse, or other place of confinement of prisoners is the exercise of a purely governmental power. "The courts of this state have said in conclusive form that the neglect of a municipal corporation to perform or its negligence in the performance of a public duty imposed on it by law, is a public wrong to be remedied by indictment, and cannot constitute the basis of a civil action by an individual who has suffered particular damage by reason of such neglect." Waters v. Newark, 56 N.J.L. 361 (Sup. Ct. 1894); affirmed 57 N.J.L. 456 (E. & A. 1894). "But it is also a rule of law of equal importance that the exemption of a municipal corporation from actions by individuals suffering special damage from its neglect to perform or its negligence in performing public duties, whereby public wrong is done for which an indictment will lie, does not extend to actions where the injury is the result of active wrong-doing chargeable to *243 the corporation." Doran v. Asbury Park, 91 N.J.L. 651 (E. & A. 1918); Kehoe v. Rutherford, 74 N.J.L. 659 (E. & A. 1907). See Bengivenga v. Plainfield, 128 N.J.L. 418 (E. & A. 1942); Truhlar v. Borough of East Paterson, 4 N.J. 490 (1950). The generally accepted rule of a majority of the jurisdictions throughout the United States holds that: "* * * a municipality is not liable to a person arrested and imprisoned in a municipal jail or workhouse for injuries received by him while so confined, by reason of the improper construction or negligent maintenance of such place, or by reason of the wrongful acts or negligence of the officers, agents, or employees, who are charged with the proper care of such persons while they are so confined, as where, owing to such negligence, prisoners are injured by fellow prisoners." 63 C.J.S., Municipal Corporations, § 904, Injury to Prisoners, p. 310. "In erecting, maintaining and managing jails, workhouses, and police stations, according to the judicial decisions, the municipality is exercising a purely governmental function, and is not liable for injury inflicted by its officers and servants in the exercise of such function, unless expressly so provided by statute." 41 Am. Juris., Prisons and Prisoners, sec. 17, p. 896; cf. McQuillin, Municipal Corporations (3d ed.), vol. 18, sec. 53.94, pp. 396, 397.
The plaintiff asserts that his right of action comes within that class of cases where a municipality may be held liable for damages suffered as a result of active wrongdoing on the part of the municipality, citing the cases of Truhlar v. Borough of East Paterson, supra; Kress v. City of Newark, 9 N.J. Super. 70 (App. Div. 1950); Milstrey v. City of Hackensack, 8 N.J. Super. 221 (App. Div. 1950); Allas v. Rumson, 115 N.J.L. 593 (E. & A. 1935); Hammond v. County of Monmouth, 117 N.J.L. 11 (Sup. Ct. 1936); and Fisher v. Nutley, 120 N.J.L. 290 (E. & A. 1938). The rule of law enunciated in the foregoing cases cited by the appellant is undisputed. However, as we see it, it is not applicable to the issue here under review. At the argument, counsel for both parties stated that they had been unable to find any analogous *244 New Jersey cases. Similarly, our research has failed to reveal any New Jersey decision that is parallel to the factual situation here. The following cases, although not factually analogous, are cited as indicative of the position taken by our courts in disposing of actions brought by prisoners against governing bodies, to wit: Tomlin v. Hildreth, 65 N.J.L. 438 (Sup. Ct. 1900); Watkins v. Freeholders of Atlantic, 73 N.J.L. 213 (Sup. Ct. 1906); and Miller v. Belmar, 5 N.J. Misc. 224 (Sup. Ct. 1927). In the Tomlin case (an action against the City of Cape May and others for damages allegedly caused by an assault and battery committed upon the plaintiff when he was arrested and falsely imprisoned), the defendant's demurrer to plaintiff's declaration was sustained. Mr. Justice Fort, speaking for the court stated:
"It is very doubtful whether a municipality can be held in any case for an assault or false imprisonment by its agent or servant without clear proof at least of an express authorization or direction of the act by its duly constituted authorities acting in solemn form to bind the corporation in the performance of an act or duty authorized by law. Smith v. City of Rochester, 76 N.Y. 506."
In the Watkins case (an action to recover damages suffered by plaintiff during his detention as a witness in behalf of the State, resulting from the county's failure to provide proper food and shelter and unnecessary restriction of his liberty), defendant's demurrer to the declaration was sustained, the court holding that the general rule that an action will not lie in behalf of an individual who has sustained a special damage through the negligence of a municipal corporation to perform a public duty unless the right of action is conferred by statute, similarly applied to a situation where the employees as officers of the municipal corporation are negligent in the performance of such duties; that the doctrine of respondeat superior will not operate to create a liability on the part of the corporation in such a case. In the Miller case (an action by the plaintiff for assault and battery, false imprisonment and malicious prosecution against the Borough of Belmar, its mayor and a *245 police officer), the court held that on the authority of Tomlin v. Hildreth, supra, there was no liability upon the part of the borough for the plaintiff's damages.
"The courts are unanimous in holding that a county is not liable for injuries to a prisoner received by being confined in an unhealthful or unfit prison." 46 A.L.R., at p. 95, citing Watkins v. Freeholders of Atlantic, supra, and decisions of other states. The generally accepted rule of law throughout the United States applicable to the factual issue here is stated in the following language: "In the absence of statute, a county is not liable for injuries to convicts suffered by the latter due to the misconduct or negligence of those having them in charge." 46 A.L.R., at p. 96, citing numerous decisions of other jurisdictions. "As a general rule a municipal corporation is not liable for injuries to prisoners or convicts resulting from the negligence of the keeper, guard, policeman, or convict boss in charge of them, for the reason that, in the maintenance of a jail and the working of convicts, the municipality is exercising governmental powers and discharging governmental duties, and cannot be held responsible for the negligence or misconduct of officers which it must, of necessity, employ." 46 A.L.R., at pp. 100, 101, and cases cited therein.
In our research we have found two cases that appear to be analogous to the issue here, viz.: Lewis v. State, 96 N.Y. 71, 48 Amer. Rep. 607 (Ct. of App. 1884) and Ulrich v. City of St. Louis, 112 Mo. 138, 20 S.W. 466, 34 Am. St. Rep. 372 (1892). In the Lewis case, supra, the prisoner was injured while engaged in carrying molten iron in a defective ladle. The ladle separated from the shank and the melted iron spilled to the floor, where it came into contact with water, causing an explosion and serious injury to the prisoner. The defect in the ladle had previously been called to the attention of the supervisor but no repairs had been made thereto. The court held:
"It is now contended by the learned counsel for the appellant that the act of the overseer in compelling the claimant to use the *246 defective ladle, after having been notified of its unsafe condition, was an act of the State and of gross and inexcusable negligence. It is apparent that even if this is so the claimant must fail unless the doctrine of respondeat superior can be applied to the State, and the State made liable for the negligence or misfeasance of its agents, in like manner as a natural person is responsible for the acts of his servants. We are aware of no principle of law, nor of any adjudged case which makes that application, except when the State, by its legislature, has voluntarily assumed it. The contrary of this is well settled upon grounds of public policy, and the doctrine is so uniformly asserted by writers of approved authority and the courts that fresh discussion would be superfluous. (Story on Agency, sec. 319 (7th ed.)). Indeed the principle upon which the doctrine is founded  that he who expects to derive advantage from an act which is done by another for him must answer for any injury which a third person may sustain from it, excludes such a case as we have before us. The claimant was not a voluntary servant for hire and reward, nor was the State his master in any ordinary sense. He was compelled to labor as a means of reformation, and to endure imprisonment as a punishment and for the protection of the community. While employed he was subject to such regulations as the keeper charged with his custody might, from time to time, prescribe, and if in the course he sustained injury, it must be attributed to the cause which placed him in confinement."
Subsequent to the determination of the Lewis case, New York State "has waived its sovereign immunity from liability for the torts of its officers and employees. Court of Claims Act, Sec. 12-a, L. 1929, ch. 467; see now sec. 8, L. 1939, ch. 860. No longer is the State immune from liability for torts of its officers, agents and employees." Bloom v. Jewish Board of Guardians, 286 N.Y. 349 (Ct. of App. 1941); 36 N.E.2d 617, 618. No such statute waiving immunity has been adopted by the Legislature of this State. "The exemption of municipal corporations from liability to such actions has been put by our courts on the ground of ancient precedent and public policy. Livermore v. Freeholders, 29 N.J.L. 245; Id., 31 N.J.L. 507. That public interest is deemed to be conserved by this exemption from liability seems apparent from the fact that the legislature may at any time impose such liability on municipal corporations, and has failed to do so except in a few instances." Buckalew v. Freeholders of Middlesex, 91 N.J.L. 517 (E. & A. 1918), at p. 520.
*247 In the Ulrich case, supra (an action by a prisoner for injuries sustained when he was kicked by a mule which the keeper at the workhouse had ordered him to harness), the court, in disposing of his action, stated:
"Held that defendant was not liable for such injuries, though the superintendent knew that the mule was vicious, since defendant, in maintaining the workhouse and committing offenders in satisfaction of fines imposed, was exercising its governmental function."
In the instant case, we do not think the proofs justify our departure from the generally accepted rule, as hereinabove discussed, and adopted by a majority of the jurisdictions throughout the United States.
The judgment of the County Court is affirmed.