**Victor John GOMEZ, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 8986.**

United States District Court
D. Colorado.

July 1, 1965.

Walter L. Gerash, Denver, Colo., for plaintiff.

Lawrence M. Henry, U. S. Atty., Robert E. Long, Asst. U. S. Atty., Denver, Colo., for defendant.

DOYLE, District Judge.

The United States of America, defendant in this action, has moved for summary judgment on the ground that plaintiff, Victor John Gomez, does not come within the scope of. the Federal Tort Claims·Act, Title 28 U.S.C. §§ 1346(b), 2671–2680, inasmuch as he is covered by the provisions of 18 U.S.C. § 4126 which make available an administrative remedy. A hearing was held on June 22, 1965, and briefs have been submitted.

The relevant facts are as follows:

Plaintiff was serving a one and one-half year term in a federal correctional institution for unlawful possession of a selective service registration card when, on January 17, 1964, he was injured while working with a construction crew. The index and middle fingers of his left hand were amputated, the fourth digit· was fractured, and the extension tendon of that finger was severed. Plaintiff alleges that these injuries were proximately caused by defendant's negligence in permitting the use of a faulty skill saw, and in the negligent use of that saw by defendant's employee.

Prior to his discharge, plaintiff filed a claim for compensation pursuant to 18 U.S.C. § 4126, and an award was decreed in the amount of $2,627.07. On January 20, 1965, plaintiff's attorney notified Federal Prison Industries, Inc., that the award would be declined.

The only question presently before the Court is whether the available compensation coverage precludes an action under the Tort Claims Act.

Essentially, defendant maintains that, where administrative remedies have been provided, the Tort Claims Act is inapplicable. While this is true with respect to several of the federal compensation acts, it is not uniformly so. See Annotation, "Remedy under other federal statute as affecting relief under Tort Claims Act," 84 A.L.R.2d 1059 (1962), especially §§ 6, 7, and 8. As the Supreme Court said in United States v. Muniz, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963):

> " * * * the presence of a compensation system, persuasive in Feres, does not of necessity preclude a suit for negligence."

Concededly, plaintiffs in the Muniz case did not seek relief for work-related injuries and, therefore; unlike the plaintiff in the case at bar, were not covered by any compensation plan. However, the Court in Muniz specifically held that, when the Tort Claims Act was enacted, Congress affirmatively intended the scope of the Act to encompass federal prisoners:

> " * * * [W]e believe it is clear that Congress intended to waive sovereign immunity in cases arising from prisoners' claims." 374 U.S. at p. 158, 83 S.Ct. at p. 1855.

In this connection, it is noteworthy that, originally, section 4126 allowed compensation solely for injuries incurred while working for Federal Prison Industries, Inc. The section was first enacted in 1934 when the Federal Prison Industries Corporation was created. In 1961 the section was amended expanding coverage to inmates injured while engaged in any work activity relating to the maintenance or operation of the institution where confined. It appears, then, that plaintiff's coverage results from this 1961 amendment. The question is whether this amendment operates to substitute an administrative remedy for the right to seek relief under the Tort Claims Act.

As already indicated, the existence of some provision for compensation does not *ipso facto* bar recourse to an action under the Tort Claims Act. In determining the effect of a particular compensation system, there appear to be two competing principles. On· one hand, the thrust of several Supreme Court decisions has been

to give a broad interpretation to the Tort Claims Act. These decisions include: United States v. Brown, 348 U.S. 110, 75 S.Ct. 141, 99 L.Ed. 139 (1954); Indian Towing Co., Inc. v. United States, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955); Rayonier, Inc. v. United States, 352 U.S. 315, 77 S.Ct. 374, 1 L.Ed.2d 354 (1957); and, of course, United States v. Muniz, supra. In the Brown case, the Court said:

"Congress could, of course, make the compensation system the exclusive remedy. The Court held in Johansen v. United States, 343 U.S. 427, 72 S.Ct. 849, 96 L.Ed. 1051, that Congress had done so in the case of the Federal Employees' Compensation Act, 5 U.S.C.A. § 751 et seq., with the result that a civilian employee could not sue the United States under the Public Vessels Act, 46 U.S.C.A. § 781 et seq. We noted in the Brooks case [Brooks v. United States], 337 U.S. 49, 53, 69 S.Ct. 918, 920 [93 L.Ed. 1200], that the usual workmen's compensation statute was in this respect different from those governing veterans, that Congress had given no indication that it made the right to compensation the veteran's exclusive remedy, that the receipt of disability payments under the Veterans Act was not an election of remedies and did not preclude recovery under the Tort Claims Act but only reduced the amount of any judgment under the latter Act. We adhere to that result. * * *" 75 S.Ct. 141 at 143, 144.

And in Muniz, the Court added:

"The Federal Tort Claims Act provides much-needed relief to those suffering injury from the negligence of government employees. We should not, at the same time that state courts are striving to mitigate the hardships caused by sovereign immunity, narrow the remedies provided by Congress. As we said in Rayonier, Inc., v. United States, supra, 352 U.S. at 320, 77 S.Ct. at 377, 'There is no justification for

this Court to read exemptions into the Act beyond those provided by Congress. If the Act is to be altered that is a function for the same body that adopted it.'" 83 S.Ct. 1850 at 1859.

These two passages emphasize that, at least where the Tort Claims Act is concerned, a compensation system will not be read to provide an exclusive remedy without some strong indication that Congress intended such a result. In many instances, the indication has been an express provision to that effect: 5 U.S.C. § 757(b), the Federal Employees' Compensation Act; 5 U.S.C. § 150k–1(c), relating to employees of nonappropriated fund instrumentalities of the Armed Forces; 46 U.S.C. §§ 741–752 and 781–790, the Suits in Admiralty Act and the Public Vessels Act, which are exempted by 28 U.S.C. § 2680. In addition, several other exemptions are explicitly set forth in 28 U.S.C. § 2680.

On the other hand, defendant relies strongly on certain expressions that weight is to be given to the fact that a "system of simple, certain, and uniform compensation for injuries or death" has been provided. Feres v. United States, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950); Johansen v. United States, 343 U.S. 427, 72 S.Ct. 849, 96 L.Ed. 1051 (1952). However, Johansen did not involve the Tort Claims Act (see the above quotation from Brown). As for Feres, the existence of a simple, certain, and uniform system of compensation was only one of several important factors supporting that decision. The other factors were the peculiarly federal relationship between soldiers and the United States; the threat to discipline of allowing suits for negligence; the non-existence of a similar action at common law; and the need for uniformity. The Court also stressed the comprehensiveness of the compensation system. Each of these factors was considered at length in Muniz, and each in turn was held inapplicable to federal prisoners.

Our conclusion from these cases is that, while the existence of a full-

blown compensation program may be persuasive that Congress intended it as the exclusive remedy for persons within its ambit, that is not the effect accorded to a compensation system which is not comprehensive, not certain, and not in terms simple or uniform, as in the case of 18 U.S.C. § 4126. That section provides:

> "The corporation, * * * is authorized to employ the fund, and any earnings that may accrue to the corporation, as operating capital in performing the duties imposed by this chapter; in the repair, alteration, erection and maintenance of industrial buildings and equipment; in the vocational training of inmates without regard to their industrial or other assignments; in paying, under rules and regulations promulgated by the Attorney General, compensation to inmates employed in any industry, or performing outstanding services in institutional operations, and compensation to inmates or their dependents for injuries suffered in any industry or in any work activity in connection with the maintenance or operation of the institution where confined. In no event shall compensation be paid in a greater amount than that provided in the Federal Employees' Compensation Act."

The compensation system here provided is not comprehensive and certain. In Winston v. United States, 305 F.2d 253 (2 Cir., 1962) the majority of the Court held that any compensation available to prisoners was wholly dependent on the discretion of the Attorney General, 305 F.2d at pp. 256 and 263. This is substantiated by a communication from R. J. LaVallee, Secretary of Federal Prison Industries, Inc., dated September 24, 1953, and stating: " * * * the amount of the award is entirely within the discretion of the Attorney-General." See Note, "Denial of Prisoners' Claims under the Tort Claims Act," 63 Yale Law Journal 418 at p. 423, n. 42. Further support for this conclusion is found in 28 C.F.R., ch. III, the regulations giving

effect to the provisions of 18 U.S.C. § 4126. Section 301.5 of that chapter provides that compensation payments, which commence upon the inmate's release, will cease if he is convicted of any crime against the federal government. Section 301.9 further provides that the corporation may elect to pay the claimant's beneficiaries in lieu of paying the claimant. In short, no *right* to compensation is here recognized. Compensation is payable during good conduct, and even then, the corporation decides who ought to receive the award. Furthermore, no procedural safeguards are set forth. No standards insuring uniformity are articulated. Finally, compensation is available, if at all, only for work-related injuries. In sum, this scheme is nothing more than what 18 U.S.C. § 4126 purports to be: an authorization to use certain funds for various purposes. It does not grant prisoners any right as a substitute for their right to sue under the Tort Claims Act. In light of the Supreme Court's holding in Muniz that Congress unquestionably intended to extend the benefits of the Act to prisoners, we find that section 4126 as amended in 1961 does not affect prisoners' rights to sue for negligence.

The decisions in Nobles v. Federal Prison Industries, Inc., 213 F.Supp. 731 (N.D.Ga.1963) and Granade v. United States, 237 F.Supp. 211 (S.D.N.Y.1965), which support defendant's position, are not persuasive. Nobles was decided prior to the Supreme Court's decision in Muniz. As for Granade, the Court there relied " * * * on the principle that where there is a remedy available in the form of a compensation system, there is no concurrent right to sue under the Federal Tort Claims Act." Our analysis of the decisions indicates that this principle, to whatever extent it exists generally, is of limited applicability to the Federal Tort Claims Act, and that it is premised on the presence of a compensation system that is comprehensive, certain, simple and uniform. It may be noted that at least one Court has disagreed with the decisions in Nobles and Granade: in Demko v. United States, a prisoner in-

jured while employed by Federal Prison Industries, Inc., received a judgment in the amount of $20,000. See Annual Report of the Attorney General of the United States for 1964, p. 395.[1] It is also noted that in a negligence action, negligence by an employee of the United States performing ministerial duties must be proved, and contributory negligence can bar recovery. None of these elements affect recovery available under section 4126, and it is not unreasonable to think that Congress was unwilling to commit itself, except on a discretionary basis, to such a sytem of liability without fault with respect to prisoners. For these reasons, we are constrained to hold that prisoners may sue under the Federal Tort Claims Act. It is, therefore,

Ordered that defendant's motion for summary judgment be, and the same is hereby denied.

1. Defendant also errs in asserting that Muniz was a departure from a uniform line of judicial expression denying prisoners' right to sue under the Tort Claims Act: Lawrence v. United States, 193 F.Supp. 243 (N.D.Ala.1961); Ellison v. United States, and Dayton v. United States, cited in Sigmon v. United States, 110 F.Supp. 906 (D.C.Va.1953); Winston v. United States, supra; 63 Yale Law Journal 418 (1953–54).